UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| ANTHONY W. GARCIA, ) | |
| ANGIE GARCIA, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Case No. 4:08 cv 77 |
| ) | |
| AARTMAN TRANSPORT CORPORATION ) | |
| fka Jim Aartman, Inc.; RUAN ) | |
| TRANSPORTATION MANAGEMENT ) | |
| SYSTEMS, INC., ) | |
| ) | |
| Defendants ) | |

## OPINION AND ORDER

This matter is before the court on the following motions: the Motion to Compel Discovery and/or for Sanctions [DE 43] filed by the plaintiffs, Anthony W. Garcia and Angie Garcia, on December 8, 2009; the Motion to Disqualify Attorney Schaefer and for Entry of Default Against Defendants [DE 47] filed by the plaintiffs on December 23, 2009; the Motion to Stay Ruling on Plaintiffs' Motion to Disqualify Attorney Schaefer and for Entry of Default Against Defendants Based Upon Newly Discovered Evidence [DE 55] filed by the plaintiffs on January 29, 2010; and the Motion for Expedited Ruling on Plaintiffs' Motion to Compel Discovery and/or for Sanctions [DE 58] filed by the plaintiffs on April 13, 2010. For the following reasons, the Motion to Compel Discovery and/or for Sanctions [DE 43] is **DENIED WITHOUT PREJU-DICE,** the Motion to Disqualify Attorney Schaefer and for Entry of Default Against Defendants [DE 47] is **DENIED,** the Motion to Stay

Ruling on Plaintiffs' Motion to Disqualify Attorney Schaefer and for Entry of Default Against Defendants Based Upon Newly Discovered Evidence [DE 55] is **DENIED AS MOOT**, and the Motion for Expedited Ruling on Plaintiffs' Motion to Compel Discovery and/or for Sanctions [DE 58] is **DENIED AS MOOT.**

Background

The plaintiffs, Anthony W. Garcia and his wife, Angie, filed a complaint alleging that Anthony was injured in a fall as he was descending a ladder attached to the tanker trailer of a milk truck. The Garcias allege that the ladder broke due to inadequate inspection, repair, and maintenance of the tanker which was owned or leased by Anthony's employer, the Dairy Farmers of America. The defendants, Aartman Transport Corporation and Ruan Transportation Management Systems, which acquired a financial interest in Aartman, were responsible for the inspections, maintenance, and repairs to the tankers.

The Garcias filed their Motion to Compel Discovery and/or for Sanctions based upon the delinquent responses to the Plaintiffs' First and Supplemental Set of Discovery Requests (Interrogatories and Requests for Production of Documents). The Garcias filed their First Set of Discovery Requests on October 21, 2009, and their Supplemental Set of Discovery Requests on October 29, 2009. The depositions of Aartman/Ruan representatives were scheduled for November 30, 2009, the same day as the discovery deadline. When Aartman/Ruan informed the Garcias that

the discovery would not be available within the 30 day period to respond, the Garcias cancelled the November 30, 2009 depositions.

On December 3, 2009, counsel for the Garcias sent a letter to opposing counsel requesting an immediate response to the discovery and a rescheduling of the depositions. That same day, the two attorneys discussed on the telephone a December 7, 2009 deadline for the discovery responses and the possibility of rescheduling the depositions for December 9 or 10. These delays affected the Garcias' ability to provide the necessary expert reports within the court's time frame and jeopardized the trial "scheduled for June 2010." (DE 43, pp. 3-4) The Garcias mention that "both counsel have previously afforded each other wide latitude towards the discovery process," but that Aartman/Ruan's delays at this point required court action.

Aartman/Ruan points out in its response that the Garcias waited until 40 days before the discovery deadline before serving their first set of interrogatories and production requests, rapidly followed by the supplemental set eight days later. The Garcias waited until 13 days before the deadline before serving their deposition notices. In their reply, the Garcias explain that they were awaiting Aartman/Ruan's responses to the discovery requests made in April 2009 by the other defendant, Semo Tank/Baker Equipment Company. The Garcias state that they chose to delay their own discovery until after reviewing the responses to Semo rather than duplicate Semo's efforts.

3

On December 23, 2009, the Garcias filed their Motion to Disqualify Attorney Schaefer and for Entry of Default Against Defendants. In this filing, the Garcias allege that there are missing documents from the file regarding tanker trailer No. 960 and improper conduct by Aartman/Ruan counsel, Jonathan P. Schaefer. This misconduct allegedly requires the disqualification of Schaefer and an entry of default against Aartman/Ruan.

Angie worked for Aartman/Ruan at the time of her husband's accident. In their brief supporting the Motion to Disqualify, she alleges that the company file for tanker trailer No. 960 was missing documents. Suspicious, she made copies for herself of the file and also took photos of the tanker trailers and ladders at the facility. The brief alleges that her investigation led to reduced hours, and ultimately Angie quit her job there. The brief adds several other allegations and suspicions of Angie's concerning terminal manager, Mike Black.

The brief proceeds to inform the court that in conducting discovery, the Garcias have tried to depose several former Aartman/Ruan employees. The Garcias are upset because they have been informed that Schaefer represents several of these former employees, including one Angela Seanz, who allegedly ordered the burning of some documents. Upon contacting Seanz, the Garcias were told that she did not want to reveal her current proper name or address, that she indeed directed the burning of documents, that she had filed an internal sexual harassment claim against Black, that she "could not talk to undersigned counsel about any

activities of Aartman/Ruan due to restrictive language contained in her severance package agreement," and that several other former Aartman/Ruan employees also signed similar restrictive severance package agreements.  (Pltfs. Memo. in Supp. of Mtn. to Disq., p. 5)  The Garcias challenge the existence of severance agreements which may contractually impede communications from former employees who are witnesses in this matter, the "sham" of Schaefer representing these former employees, and the "preemptive assertion of the attorney/client privilege."  (Pltfs. Memo. in Supp., p. 6)  The motion alleges that Schaefer has violated several Rules of Professional Conduct and asks that Schaefer be disqualified from participating in this matter.

In its response, Aartman/Ruan makes a cross-motion for sanctions against the Garcias for bringing forth a motion that is unsupported by law and/or evidence.  Aartman/Ruan states that as corporate counsel, nothing precludes Schaefer from representing former employees who are called as witnesses and that although counsel for the plaintiffs may speak to a former employee informally, that witness is under no obligation to do so.  The response includes as an exhibit a copy of the Employee Release Agreement, the aforementioned severance agreement, entered into by the former Aartman/Ruan employees.

The introduction of the agreement states, "WHEREAS, the parties mutually wish to resolve and settle all possible disputes and claims pertaining to or arising from Employee's employment and discontinuation of employment with the Company," and includes

5

the following declarations which the Garcias censure in their reply:

> 7. <u>Confidentiality</u>
>
> Employee warrants and agrees that Employee has not disclosed and will not disclose, the existence, facts or terms of this Agreement or any fact concerning its negotiation, execution, or implementation including any and all references to any alleged underlying facts or claims, except to Employee's immediate family and to persons representing or advising Employee for accounting, tax or legal purposes or as otherwise required by law. Employee agrees to indemnify Releasees for any damages caused by disclosure of the fact and/or terms of this Agreement or the underlying facts or claims by Employee's family or persons advising Employee for accounting tax or legal purposes, unless such disclosure was required by law. Employee agrees to notify the Company if Employee is contacted or subpoenaed by any private or government individual or entity in connection with any legal proceeding or investigation pertaining to or affecting Releasees. Such notice shall be given to the, Vice President of Human Resources. 666 Grand Avenue, Des Moines, Iowa 50309.
>
> * * *
>
> 9. <u>Employment inquiries</u>
>
> The Company will provide a neutral response to employment inquiries.
>
> 10. <u>Nonadmission and nondisparagement</u>
>
> The Existence and terms of this Agreement are not an admission of liability or wrongdoing by either party. Neither party shall disparage the other.
>
> (DE 52-9, Employment Release Agreement)

On January 29, 2010, the Garcias filed their Motion to Stay Ruling on Plaintiffs' Motion to Disqualify Attorney Schaefer and

for Entry of Default Against Defendants Based Upon Newly Discovered Evidence.  In it, the Garcias ask the court to stay any ruling on the previous Motion to Disqualify until they can complete additional discovery and file supplemental briefs on the subject.  This motion repeats many of the allegations of the prior motion and labels the severance agreement "nefarious and coercive" for contractually requiring former employees not to disparage Aartman/Ruan.  The prayer asks the court to allow for additional discovery before ruling on the earlier motion to disqualify.

On April 13, 2010, the Garcias filed their Motion for Expedited Ruling on Plaintiffs' Motion to Compel Discovery and/or for Sanctions, requesting that the court rule on their earlier motion which remains pending.

## Discussion

A motion compelling disclosure or discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person failing to make disclosure or discovery in an effort to obtain it without court action."  Federal Rule of Civil Procedure 37(a)(1).  Local Rule 37.1(c) requires that such certification reciting the date, time, and place of the conference or attempted conference and the names of all persons participating "shall be made in a separate document filed contemporaneously with the motion."

As support for the meet and confer requirement, counsel for the Garcias has tendered his letter to opposing counsel dated

7

December 3, 2009, in which he formally demands a response to the outstanding discovery under threat of a motion before the court. Aartman/Ruan includes as an exhibit the subsequent email exchange between counsel. The chain shows an email from Garcias' counsel on the morning of December 8, 2009, requesting the responses that he was expecting the day before. Aartman/Ruan's counsel replied that afternoon and stated that he expected the responses would be provided the next day and suggested a schedule for depositions. The Motion to Compel Discovery and/or for Sanctions [DE 43] was filed on that day, December 8, 2009. With its December 22, 2009 response to the motion, Aartman/Ruan included the responses to the discovery requests - less than 30 days after the due date. Garcias' reference to any delays by Aartman/Ruan in its responses to Semo is irrelevant because no dispute was brought to the attention of the court, suggesting that the co-defendants successfully worked out the problems on their own.

    Despite Garcias' argument of prejudice due to an impending trial date, no trial has been set on the court's calendar. Regardless of what the parties may have mapped out at their Rule 16 conference, this court does not set a trial date until after the close of discovery and the opportunity to file dispositive motions. The reasons for this practice are clear and well-demonstrated by the bickering at hand: judicial efficiency is better served by leaving such matters unscheduled until all possible discovery disputes have been addressed, at which point

discovery should have revealed whether a dispositive motion was justified.

The requirement to meet-and-confer must be taken seriously, because "[b]efore the court can rule on a motion, the parties must demonstrate they acted in good faith to resolve the issue among themselves."  See **Robinson v. Potter**, 453 F.3d 990, 994-95 (8th Cir. 2006)(*citing* **Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.**, 339 F.3d 180, 186 (3rd Cir. 2003).  See **Shoppell v. Schrader**, 2009 WL 2515817, *1 (N.D. Ind. August 13, 2009)(finding good faith certification of a single letter and a brief telephone conversation inadequate).  Here, the court is unimpressed with the attempts to resolve this matter without court intervention because the discovery dispute has no substantive issues, but solely is premised on an inability to communicate in a timely manner.  Plaintiffs' counsel's December 3, 2009 letter and December 8, 2009 email, quickly followed by the Motion to Compel, do not comply with the certification requirements, and the motion is therefore **DENIED WITHOUT PREJUDICE**.  *See, e.g.,* **Rockies Exp. Pipeline LLC v. Indiana State Natural Resources Com'n**, 2010 WL 1881084, *4 (S.D. Ind. May 7, 2010)(discussing denial of a motion to compel for failure to hold a meet-and-confer); **Carlson v. City of Delafield**, 2010 WL 1641915, *2 (E.D. Wis. April 21, 2010) ("[U]ltimately, the content and tone of the communications determine whether the attempt to conciliate was sincere and, thus, sufficient to satisfy the pre-filing meet and confer requirements."); **Lincoln Nat. Life v. Transamerica Financial Life Ins.**

*Co.*, 2009 WL 4547131, *4 (N.D. Ind. November 25, 2009) (taking motion to compel under advisement while directing counsel to meet and confer in accordance with Local Rule 37.1 and file a joint status report).

None of the briefing on the motion to compel addresses the substance of the discovery dispute, but instead centers on the timing. A simpler and more logical plan would have been for one or both of the parties to request an extension of the deadlines, which was accomplished without difficulty in late January 2010. (*See* DE 54, Stipulation to Continue All Pre-Trial Deadlines, and DE 56, Order granting the Stipulation) The Garcias' protestations in their reply, arguing that Aartman/Ruan's belated objections are waived, misses the point that the Garcias had agreed to some extra time for responses. For example, although Garcia avers that his discovery requests were all timely, noticing up a deposition set for the final day of discovery was fraught with peril, especially with that date being only 32 days after service of the second set of discovery requests. Cutting things so close led to predictable results.

The Garcias' Motion to Disqualify Attorney Schaefer makes four arguments. The first is that counsel for the Garcias, Gregory Tonner, is not prohibited from speaking to any former employees of the defendants. Rule 4.2 of the Indiana Rules of Professional Conduct states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the mat-

10

> ter, unless the lawyer has the consent of the other lawyer or is authorized by law or a court order.

Comment 7 to that Rule adds that "[c]onsent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule."

Tonner is correct that he may speak to former employees without consent of Aartman/Ruan's counsel, and the case law he provided supports this notion. However, although Tonner *may* communicate ex parte with the former employees, the former employees are under no obligation to provide information to Tonner. In addition, once a former employee acquires representation - by whomever he chooses - Tonner is required to communicate with that counsel. No case law and no Rules of Professional Conduct dispute these parameters.

The second argument is that Schaefer is prohibited from representing the former employees based on Rules 1.13 and 4.3 of the Indiana Rules of Professional Conduct. Rule 4.3 provides:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such person are or have a rea-

> sonable possibility of being in conflict with
> the interests of the client.

Comment 10 of Rule 1.13 concerning an Organization as a Client states:

> There are times when the organization's in-
> terest may be or become adverse to those of
> one or more of its constituents.  In such
> circumstances the lawyer should advise any
> constituent, whose interest the lawyer finds
> adverse to that of the organization of the
> conflict or potential conflict of interest,
> that the lawyer cannot represent such con-
> stituent, and that such person may wish to
> obtain independent representation.  Care must
> be taken to assure that the individual under-
> stands that, when there is such adversity of
> interest, the lawyer for the organization
> cannot provide legal representation for that
> constituent individual, and that discussion
> between the lawyer for the organization and
> the individual may not be privileged.

No case law is provided to support the Garcias' claim that there is a conflict of interest on behalf of either the employer or the former employees in this matter.  The contention that "none of the former employees had a need to be represented by defense counsel" misses the mark: the former employees are free to seek representation if they so desire.

The third argument for disqualification accuses Schaefer of solicitation, citing Rule 7.3 of the Indiana Rules of Professional Conduct, which provides:

> (a) A lawyer shall not seek or recommend by
> in-person contact (either in the physical
> presence of, or by telephone, or by real-time
> electronic contact), the employment, as a
> private practitioner, of the lawyer, the
> lawyer's partner, associate, or the lawyer's
> firm, to a nonlawyer who has not sought ad-
> vice regarding the employment of a lawyer, or
> assist another person in so doing unless the

> contacted non-lawyer has a family or prior professional relationship with the lawyer.
>
> (b) A lawyer shall not solicit professional employment from a prospective client by written or recorded communication or by in-person or telephone, or by real-time electronic contact even when not otherwise prohibited by paragraph (a) if:
>
>> (1) the prospective client has made known to the lawyer a desire not to be solicited by the lawyer; or
>>
>> (2) the solicitation involves coercion, duress or harassment.

The Garcias' allegation that "[i]t is inconceivable the six (6) individuals who live primarily in Jasper, Newton and White Counties in Indiana would all miraculously end up with representation by the same attorney who practices law in Chicago" is unsupported by facts. Frankly, the court does not think it is inconceivable that upon receipt of a subpoena to testify about something that happened during their employment at Aartman/Ruan, a former employee would contact the former employer and its counsel for representation. Until the court is provided facts that prove otherwise, no assumption of impropriety will be made concerning Schaefer's representation of the former employees.

The Garcias' fourth argument for disqualification likens the severance agreements to de facto witness tampering by Schaefer. The Garcias cite Rule 3.4 concerning Fairness to Opposing Party and Counsel of the Indiana Rules of Professional Conduct:[1]

---

[1] The Garcias also cite the Federal Criminal Code for witness tampering, 18 U.S.C. §1512, which carries a fine and up to 20 years imprisonment.

A lawyer shall not:

> (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
>
> (b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;
>
> (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
>
> (d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;
>
> * * *
>
> (f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
>
>> (1) the person is a relative or an employee of other agent of a client; and
>>
>> (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

The Garcias cite no case law to support the argument that a severance package agreement could or would preclude testifying about an unrelated tort claim. Rather, they contend that the depositions of former employees which already have occurred could

14

be tainted by the withholding of information due to the severance agreements and that "unrepairable harm" already has taken place. It is this irreparable harm that the Garcias believe leaves no other remedy but the entry of a default judgment against Aartman/Ruan.

Contract interpretation is a question of law, and if the terms of a contract are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Gatlin Plumbing & Heating, Inc. v. Estate of Yeager*, 921 N.E.2d 18, 23 (Ind. App. 2010)(*citing* *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005)). "In interpreting an agreement, the court is under an obligation to read the agreement in a manner which harmonizes its provisions as a whole and to give effect to the parties' expressed intent." *Trustees of Indiana University v. Cohen*, 910 N.E.2d 251, 257 (Ind. App. 2009)(*citing* *Kelly v. Smith*, 611 N.E.2d 118, 121 (Ind. 1993)). *See also* *Evansville-Vanderburgh School Corp. v. Moll*, 344 N.E.2d 831, 837 (Ind. 1976)("The meaning of a contract is ascertained from a consideration of all its provision, not from a consideration of individual words, phrases or paragraphs read alone.").

Taking the meaning of the severance agreement here at face value and harmonizing its provisions as a whole, the court finds the Employment Release Agreement specifically pertains to the end of the employment relationships and does not implicate the former employees' testimony in the tort claim at hand. The introduction to the agreement clearly states its purpose "to resolve and

settle all possible disputes and claims *pertaining to or arising from Employee's employment and discontinuation of employment* with the company." The clear and ordinary meaning to be gleaned is that the agreement is limited to just such disputes and claims. The excised prohibitions of disclosure and disparaging that the Garcias decry cannot be interpreted outside of the realm of the contract as a whole, and therefore cannot be read to restrict a former employee from testifying truthfully to unrelated issues which do not involve the signer's employment or discontinuation of employment. Any non-disclosure clauses in the agreement cannot be construed to be de facto witness tampering or even unfair to an opposing party.

Because none of the Garcias' four arguments to disqualify attorney Schaefer are supported by fact or law, the Plaintiffs' Motion to Disqualify Attorney Schaefer and for Entry of Default is **DENIED.**

The Plaintiffs' Motion to Stay Ruling on Plaintiffs' Motion to Disqualify Attorney Schaefer and for Entry of Default Against Defendants Based Upon Newly Discovered Evidence asks the court to stay its ruling on the motion discussed above to allow additional discovery. The same day that this motion was filed, this court ruled on a Stipulation to Continue All Pre-Trial Deadlines and the Jury Trial Setting filed two days prior by the Garcias. (See DE 56) Because that Order extends all discovery dates, because there is no court-order trial date, and because the court has ruled on the motion to disqualify above, this motion is unneces-

sary and **DENIED AS MOOT**. If the Garcias discover facts and supporting law to support any ethical charges against opposing counsel, they are free to bring them to the court's attention. However, any further motions made without supporting facts and law amounting to nothing more than conjecture will be stricken and result in sanctions.

Finally, the court addresses Plaintiffs' Motion for Expedited Ruling on Plaintiffs' Motion to Compel Discovery and/or for Sanctions. It appears necessary to explain how this court manages its docket.

Tonner filed his first Motion to Compel on December 8, 2009, and he is correct that between that time and the time he filed his April 13, 2010 Motion for Expedited Ruling, over 100 days had passed. During that time, the original motion was being briefed (the Reply was filed on December 28), Tonner filed his December 23, 2009 Motion to Disqualify Attorney Schaefer and for Entry of Default[2] (which was fully briefed on January 15, 2010), and then Tonner filed his January 29, 2010 Motion to Stay Ruling on (his previous) Plaintiffs' Motion to Disqualify and for Entry of Default (which was fully briefed on February 12, 2010). In actuality, less than 60 days had passed since the pending motions were all briefed before the Motion for Expedited Ruling was filed.

---

[2]Note that the second motion was filed before the first was even fully briefed.

It is highly inefficient for the court to handle one motion in a case while others still are being briefed. When parties continue to file motions and counter-motions, the pile of briefs continues to grow, requiring more time to review the record and draft an opinion. So, the collection of disputes must wait until the court is able to devote the necessary time to resolve all the issues.

The federal government keeps tabs on its courts' progress in addressing motions and the passage of time which motions remain pending, making it unnecessary for a party to file a motion to spur the court into action or direct the court to act on motions in a certain order. Because the earlier motion to compel was handled in the normal course of business, the Plaintiffs' Motion for Expedited Ruling on Plaintiffs' Motion to Compel Discovery and/or for Sanctions is **DENIED AS MOOT**.

_____

For the foregoing reasons, the the Motion to Compel Discovery and/or for Sanctions [DE 43] filed by the plaintiffs, Anthony W. Garcia and Angie Garcia, on December 8, 2009 is **DENIED WITHOUT PREJUDICE;** the Motion to Disqualify Attorney Schaefer and for Entry of Default Against Defendants [DE 47] filed by the plaintiffs on December 23, 2009 is **DENIED;** the Motion to Stay Ruling on Plaintiffs' Motion to Disqualify Attorney Schaefer and for Entry of Default Against Defendants Based Upon Newly Discovered Evidence [DE 55] filed by the plaintiffs on January 29, 2010 is **DENIED AS MOOT;** and the Motion for Expedited Ruling on Plain-

tiffs' Motion to Compel Discovery and/or for Sanctions [DE 58] filed by the plaintiffs on April 13, 2010 is **DENIED AS MOOT.**

ENTERED this 4th day of June, 2010.

                                               s/ANDREW P. RODOVICH
                                                 United States Magistrate Judge