```
                     UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF INDIANA
                          LAFAYETTE DIVISION


ANTHONY W. GARCIA,             )
ANGIE GARCIA,                  )
                               )
          Plaintiffs           )
                               )
     v.                        ) Case No. 4:08 cv 77
                               )
AARTMAN TRANSPORT CORPORATION  )
fka Jim Aartman, Inc.; RUAN    )
TRANSPORTATION MANAGEMENT      )
SYSTEMS, INC.,                 )
                               )
          Defendants           )
```

## OPINION AND ORDER

This matter is before the court on the Verified Motion for Leave to Conduct Destructive Testing [DE 71] filed by the plaintiffs, Anthony W. Garcia and Angie Garcia, on November 24, 2010. For the following reasons, the motion is GRANTED.

## Background

The plaintiffs, Anthony W. Garcia and his wife Angie, filed a complaint alleging that Anthony was injured in a fall as he was descending a ladder attached to the tanker trailer of a milk truck. The Garcias allege that the ladder broke due to inadequate inspection, repair, and maintenance of the tanker which was owned or leased by Anthony's employer, the Dairy Farmers of America. The defendants, Aartman Transport Corporation and Ruan Transportation Management Systems, which acquired a financial interest in

Aartman, were responsible for the inspections, maintenance, and repairs to the tankers.

The parties agreed in their Rule 26 planning report to an expert disclosure deadline of November 20, 2009. This date subsequently was extended on two occasions until May 14, 2010. [DE 39, 54] Due to problems arising over the plaintiffs' medical disclosures, the parties stipulated to an extension of time to provide supplemental medical expert witness disclosures on or before July 30, 2010. [DE 65] On November 10, 2010, the parties entered a final stipulation which established new deadlines, including a November 24, 2010 deadline for the plaintiffs to file their motion for leave to conduct destructive testing, and a January 21, 2011 deadline for the plaintiffs to supplement their expert witness disclosures and the expert reports of James Bernard and Mark Hineman.

The plaintiffs retained Mark Hineman, an expert in metallurgy, in June 2010. Hineman subsequently issued an expert report that failed to state a need to conduct destructive testing to supplement his report. The defendants previously had indicated that destructive testing might be necessary to determine what caused the ladder to break. However, the defendants' attorney later informed the plaintiffs that he believed that destructive testing was not necessary because the microscopic

exam already conducted was sufficient to support the conclusions drawn by the experts and because the parties agreed that the steel ladder rails sustained significant pre-event fatigue fractures. Accordingly, he did not believe that the tests would reveal any new information relevant to the remaining dispute, whether Anthony was descending the ladder at the moment of the accident.

Hineman believes that destructive testing is reasonable and necessary to determine the true cause of, and the initiation, propogation and final fracture of the ladder. Hineman intends to examine the ladder using a scanning electron microscope (SEM) to reach this determination. The SEM examination must be performed in a small vacuum chamber that can accommodate objects no larger than 4" x 4" x 2". Therefore, a small segment of the ladder rail would have to be cut from each of the fractured tube ends.

## Discussion

As an initial matter, the defendants argue that the plaintiffs' destructive testing request is untimely. The parties stipulated to an extension of the deadline for expert witness disclosures from November 20, 2009, as agreed to in their original scheduling plan, until May 14, 2010. On July 23, 2010, the court granted the parties' motion to extend the deadline to disclose medical experts until July 30, 2010. Because Hineman is

not a medical expert, the defendants argue that the plaintiffs' disclosure of Hineman after the May 14, 2010 deadline was untimely. However, the defendants ignore the court's November 12, 2010 Order that again adjusted the deadlines. The November 12, 2010 Order established deadlines for the plaintiffs to file their motion for leave to conduct destructive testing and for the plaintiffs to supplement their expert witness disclosures and reports. Because this Order granted the plaintiffs to and including January 21, 2011 to supplement their expert disclosures and reports, and specifically laid out deadlines for the parties to brief the motion for destructive testing, the plaintiffs' motion is timely.

Production of evidence for the purpose of destructive testing falls within the purview of Federal Rule of Civil Procedure 34 which provides: "A party may serve on any other party a request within the scope of Rule 26(b)(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items . . . (B) any designated tangible things . . . ." It is within the discretion of the court to permit parties to carry out destructive testing. *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D. Minn. 1988)(citing *Dabney v. Montgomery Ward & Co.*, 761 F.2d 494, 498 (8th Cir. 1985); *Cameron v. District Court*, 565 P.2d 925, 929

(Colo. 1997)). In making this determination, the courts have considered four factors:

> 1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case;
>
> 2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way;
>
> 3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and
>
> 4) Whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.
>
> Mirchandani v. Home Depot, U.S.A., Inc., 235 F.R.D. 611, 614 (citing Cameron, 565 P.2d at 929)

Special emphasis has been placed on the second prong of the test, whether the non-movant will suffer prejudice. See Sarver v. Barrett Ace Hardware, Inc., 349 N.E.2d 28, 31 (Ill. 1976) (permitting destructive testing as long as the rights of opposing litigant were not prejudiced); Petruk v. South Ferry Realty Co., 157 N.Y.S.2d 249, 253 (N.Y. App. 1956)(permitting destructive testing because the non-movant failed to show how its interests would be prejudiced).

Under similar circumstances, the New York Supreme Court permitted a party to conduct metallurgical tests on a bolt,

5

notwithstanding the fact that the bolt would be materially destroyed during the tests. Petruk, 157 N.Y.S.2d at 251-52. In this case, the non-movant failed to explain how it would be prejudiced. Petruck, 157 N.Y.S.2d at 253. There are a variety of safeguards the plaintiffs can follow to limit the risk of prejudice to the defendants. Such safeguards include allowing the defendants to photograph or otherwise record the item prior to and during testing, to provide notice of the time, place, and manner of the testing, to allow the defendants to observe or partake in the testing, to give the defendants the right to conduct or participate in similar tests, and to provide the defendants with the results of the tests. Cameron, 565 P.2d at 929; Sarver, 349 N.E.2d at 31. The risk of prejudice is even further reduced when the destructive testing will affect only a portion of the item at issue. Sarver, 349 N.E.2d at 31 (finding the non-movant would not be prejudiced, in part because the hammer still would be available for viewing by the jury after the testing was complete).

Under the first prong of the test, the plaintiffs submitted Hineman's affidavit, providing that the destructive testing is necessary to determine the true cause of the fracture. Although the defendants argue that they concede that fatigue fractures existed before the rung broke, the issue of how and under what

6

conditions the rung broke remains in dispute. If the court accepts as true, as it must without conflicting evidence, that the destructive testing will shed further light on the cause of the break, the testing is relevant to the remaining disputes of the case. Hineman did not state that the testing was for the purpose of examining the fatigue fractures, rather his desire is to conduct the testing to better determine the cause of the break including whether Anthony was descending and applying pressure to the rung of the ladder at the time of the incident. The defendants' liability turns entirely upon the cause of the break and the testing is relevant to the claim.

Having determined that the test is relevant to the remaining issues, the court next considers the risk of prejudice to the defendants. The defendants have failed to put forth any argument explaining how they would be prejudiced, and the safeguards the plaintiffs propose tend to alleviate any risk for potential prejudice. The plaintiffs suggest that the defendants take photographs and record the testing, attend and observe the tests, review the results of the test, and agree to allow the defendants to perform any further similar testing they desire. Furthermore, the destructive testing proposed by the plaintiffs will not destroy the entire piece of evidence. Rather, it requires taking a small portion of the rung cut off from the fractured end.

Therefore, the risk of prejudice is substantially reduced by the proposed safeguards, and the defendants' failure to explain any prejudice that may result causes this factor to be weighed in favor of the plaintiffs.

Having combined the third and fourth prong for considering the prejudice and potential safeguards, the court finally must consider whether alternative methods exist that would be less prejudicial to the defendants. Although the ladder already has been examined by less powerful microscopic lenses, the plaintiffs assert that the SEM testing would expose more information than was revealed by the previous tests. The defendants have not offered any other method through which the plaintiffs could obtain such information. Rather, at early stages of this case, the defendants suggested that their experts would have to engage in similar testing, and they recognized the potential for more detailed information being uncovered through SEM tests.

Because the SEM testing may provide more insight on the cause of the fracture and the record is devoid of evidence suggesting how the defendant will be prejudiced, particularly in light of the proposed safeguards, the court GRANTS the plaintiffs' motion to conduct destructive testing on the ladder. The defendants are permitted to videotape the destructive testing, may independently view the test segments under a scanning elec-

tronic microscope, and may take advantage of the other safeguards proposed by the plaintiffs. The defendants must bear their own costs for conducting their test of the segment under the scanning electronic microscope, which includes the cost of shipping the ladder segment to the defendants' metallurgist.

ENTERED this 14th day of February, 2011

    s/ Andrew P. Rodovich
      United States Magistrate Judge